UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GUSTAVO CARABALLO OLIVA,

      Petitioner,

     v.                               Case No.:  2:26-cv-02024-SPC-NPM

WARDEN OF SOUTH FLORIDA
DETENTION CENTER,

      Respondent,

_____/

## OPINION AND ORDER

Before the Court are petitioner Gustavo Caraballo Oliva's Petition for Writ of Habeas Corpus (Doc. 1) and the government's response (Doc. 9).

Caraballo Oliva is a 79-year-old native of Cuba who entered the United States on May 11, 1980.  An immigration judge ordered him excluded from the United States on March 1994.  Immigration and Customs Enforcement ("ICE") briefly detained him in 2001 before releasing him on an order of supervision. On November 3, 2025, Caraballo Oliva reported to ICE for a check-in appointment, and ICE revoked his order of supervision and arrested him.  He has been in ICE detention since then, mostly at Alligator Alcatraz.  On March 23, 2026, ICE brought Caraballo Oliva to the Mexican border and requested that he depart to Mexico.  Caraballo Oliva declined to exit the bus, and ICE returned him to Alligator Alcatraz.  Caraballo Oliva argues his detention is unlawful because his removal is not likely in the reasonably foreseeable future.

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. *Id.* Detention may continue after the removal period, but not indefinitely.

In *Zadvydas v. Davis*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. 678, 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.*

The government argues Caraballo Oliva's petition is premature because his current detention has not exceeded 180 days. They assume a six-month presumptively reasonable period of detention starts each time a noncitizen is detained. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to arbitrarily detain noncitizens and avoid judicial scrutiny by limiting consecutive periods of detention to 180 days. As the Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable '6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Caraballo Oliva has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. ICE was unable to remove him in 2001, and no change in circumstances makes removal more likely now.

The burden thus shifts to the government. ICE points to its March 2026 attempt to send Caraballo Oliva to Mexico. But the evidence before the Court suggests that was an informal effort to compel voluntary departure, not an above-board removal attempt that complied with statutory and constitutional

requirements. *See Andriasian v. Immigr. and Naturalization Servs.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."); *see also D.V.D. v. U.S. Dep't of Homeland Security*, 821 F. Supp. 3d 102 (D. Mass. 2026) (setting aside DHS's current third-country removal policy because it violates noncitizens' right to seek fear-based relief under the Convention Against Torture).  ICE makes no attempt to show it can lawfully remove Caraballo Oliva in the reasonably foreseeable future.

The Court finds no significant likelihood Caraballo Oliva will be removed in the reasonably foreseeable future.  He is entitled to release from detention under *Zadvydas*.  If removal becomes likely in the reasonably foreseeable future, ICE can detain Caraballo Oliva to "assur[e] [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 680.

Accordingly, it is hereby

**ORDERED:**

Gustavo Caraballo Oliva's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

1. The government shall release Caraballo Oliva within 24 hours of this Order and facilitate his transportation from the facility by notifying his counsel when and where he can be collected.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on July 1, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record